IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WENONAH CARNEY**, Plaintiff <br><br> v. <br><br> **TRAVELERS AID SOCIETY OF PHILADELPHIA**, Defendant | **CIVIL ACTION** <br><br> **NO. 19-3599** |

Baylson, J.                                                                   February 11, 2020

**MEMORANDUM RE: UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT**

### I. Introduction and Background

Wenonah Carney ("Plaintiff") filed suit against Travelers Aid Society of Philadelphia ("Defendant") on August 8, 2019 alleging that Defendant violated the Fair Labor Standards Act ("FLSA") and the Pennsylvania Minimum Wage Act ("PMWA") by misclassifying her as exempt, thereby resulting in a denial of overtime compensation. (ECF 1.) Following filing of the Complaint, the parties engaged in informal production and settlement discussions, and ultimately reached an agreement resolving Plaintiff's individual claims.[1] Because the parties reached a settlement, Defendant did not file a dispositive motion or answer.

Currently pending before the Court is Plaintiff's Unopposed Motion for Approval of Settlement. (ECF 6.) Following a telephone conference on January 21, 2020, Plaintiff submitted a revised Settlement Agreement and Release. (ECF 10.) Only the Confidentiality Clause, ¶ 7, was changed in the amended submission.

The Court concludes that the proposed Settlement Agreement and Release, (ECF 10), is

---

[1] Although Plaintiff's Complaint is styled as an FLSA collective action, Plaintiff never filed a motion for conditional certification. (ECF 6-1, Plaintiff's Memorandum at 1 n.1.) However, "[r]equiring judicial scrutiny of a proposed FLSA settlement, whether a collective action or private, is consistent with the FLSA's statutory structure and best meets its policy goals," (emphasis added), so the Court applies the standard for settlements involving FLSA collective actions. Kraus v. PA Fit II, LLC, 155 F. Supp. 3d 516, 524 (E.D. Pa. 2016) (Robreno, J.).

fair and reasonable, and that Plaintiff's counsel has sufficiently demonstrated entitlement to an attorney's fee award of forty percent of the total recovery. Therefore, Plaintiff's Motion is **GRANTED**.

## II.  Terms of Settlement

The proposed settlement agreement requires Defendant to pay a total of $8,500 in full settlement of Plaintiff's lawsuit. (ECF 10, Settlement Agreement and Release ¶ 1.) Defendant's $8,500 obligation will be broken down into three separate payments: (1) one check made payable to Plaintiff in the amount of $2,559.13, from which payroll taxes will be deducted and withheld (based on the claim for unpaid wages); (2) one check payable to Plaintiff in the amount of $2,559.13 (based on the claim for liquidated damages); and (3) one check payable to Plaintiff's counsel in the amount of $3,381.74 (approximately forty percent of the total settlement amount). (Id. ¶ 1(a)(i)–(iii).) In exchange, Plaintiff has agreed to release:

> any and all federal, state, and/or local wage-and-hour-related or wage payment claims, rights, demands, liabilities, debts, suits, and causes of action of every nature and description, whether known or unknown, including, without limitation, statutory (including, without limitation, under the Fair Labor Standards Act, Pennsylvania Minimum Wage Act, and Pennsylvania Wage Payment and Collection Law), constitutional, contractual, or common law claims for wages, overtime, other compensation or benefits of any kind, damages, unpaid costs, penalties, liquidated damages, penalties, interest, attorney fees, litigation costs, restitution, and equitable relief, which arose during the time that [Plaintiff] was employed by or otherwise performed services for [Defendant].

(Id. ¶ 4.) The settlement agreement also includes a confidentiality clause requiring that she refrain from "seek[ing] any publicity or mak[ing] any statement to the media or press relative to this Lawsuit." (Id. ¶ 7.) Finally, the settlement agreement contains a mutual non-disparagement provision forbidding Plaintiff from "mak[ing] or caus[ing] to be made any statements which disparage [Defendant], either orally or in writing." (Id. ¶ 9.)

## III. Legal Standard

Settlement of private disputes is generally permitted because "public policy favor[s] voluntary resolution of disputes." Dig. Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 881 (1994). However, because Congress designed the FLSA "to give specific minimum protections to <u>individual</u> workers and to ensure that <u>each</u> employee covered by the Act would receive a fair day's pay for a fair day's work," greater judicial supervision is warranted. Barrentine v. Ark.-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981) (internal quotations omitted); see also Kraus, 155 F. Supp. 3d at 526 ("[T]o approve a settlement merely because the parties agreed, regardless of its terms, thwarts Congress's goals in enacting this type of protective legislation and deprecates the employee's rights provided for under the statute.").

FLSA claims can be settled in one of two ways: "(1) a compromise supervised by the Department of Labor pursuant to 29 U.S.C. § 216(c); or (2) a district court-approved compromise pursuant to 29 U.S.C. § 219(b)."[2] Adams v. Bayview Asset Mgmt., LLC, 11 F. Supp. 3d 474, 476 (E.D. Pa. 2014) (Brody, J.). Where, as here, settlement is pursued under the second path, "the district court may enter a stipulated judgment if it determines that the compromise reached 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" Id. (quoting Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1355 (11th Cir. 1982)).

A proposed settlement warrants district court approval if the settlement satisfies three elements. ***First***, the agreement must resolve a bona fide dispute under the FLSA—that is, it must

---

[2] The Third Circuit has not explicitly required that a private FLSA settlement receive district court approval. However, the majority of district courts within the Third Circuit hold that an agreement settling FLSA claims is enforceable only if it was approved by the Department of Labor or by a district court. See Mabry v. Hildebrandt, No. 14-5525, 2015 WL 5025810, at *1 (E.D. Pa. Aug. 24, 2015) (Jones, II, J.) (collecting cases). This Court adopts the approach of the other Third Circuit district courts and will scrutinize the proposed settlement since no Department of Labor approval has been provided.

"reflect[] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute." In re Chickie's & Pete's Wage & Hour Litig., No. 12-6820, 2014 WL 911718, at *2 (E.D. Pa. Mar. 7, 2014) (Surrick, J.) (quoting Lynn's, 679 F.2d at 1354). ***Second***, the settlement must be "fair and reasonable for the employee(s)." Kraus, 155 F. Supp. 3d at 523.[3] ***Third***, the settlement must not "impermissibly frustrate[] the implementation of FLSA in the workplace." McGee v. Ann's Choice, Inc., No. 12-2664, 2014 WL 2514582, at *2 (E.D. Pa. June 4, 2014) (Schiller, J.).

## IV. Discussion

Approval of the settlement is appropriate because (A) there is a bona fide dispute under the FLSA; (B) the settlement is fair and reasonable to Plaintiff; and (C) the settlement will not frustrate the implementation of the FLSA.

### A. Bona Fide Dispute Under FLSA

As to the first requirement, the pleadings reveal a bona fide dispute under the FLSA. According to Plaintiff's Memorandum, Defendant disagrees with Plaintiff's allegation that she was misclassified as an "exempt" employee under the FLSA. (Plaintiff's Memorandum at 3; see also Settlement Agreement and Release at 1 ("[Defendant] denies the allegations in the Lawsuit and denies that it is liable for any claims alleged by [Plaintiff]").) Additionally, Plaintiff represents that there are "further disputes [about] the amount of any additional, off-the-clock work Plaintiff

---

[3] District courts in the Third Circuit typically evaluate the fairness and reasonableness of a proposed settlement under the Third Circuit's nine-factor Girsh test, which examines: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975). However, "the application of Girsh to private FLSA settlements misses the mark," because the concerns that animate the Girsh analysis are not implicated by a private FLSA settlement. Kraus, 155 F. Supp. 3d at 523 n.3.

performed" and Plaintiff's ability "to establish that Defendant, a non-profit corporation, was engaged in commerce for purposes of establishing employer coverage under the FLSA." (Plaintiff's Memorandum at 3.) These disagreements satisfy the bona fide dispute requirement, because they demonstrate that this case "fall[s] within the contours of the FLSA and [provide] evidence of the defendant's intent to reject or actual rejection of that claim when it [wa]s presented." <u>Kraus</u>, 155 F. Supp. at 530. Therefore, the first element is fulfilled.

### B. Settlement is Fair and Reasonable to Plaintiff

As to the second requirement, the Court has closely examined the settlement agreement and is satisfied that it is fair and reasonable.

#### 1. Fairness and Reasonableness of Compensation Terms

Analysis of the compensation terms of the settlement agreement reveals that they are fair and reasonable. As Plaintiff notes, there is "risk[] involved with establishing Plaintiff's misclassification, Defendant's coverage under the FLSA, and the applicability of a three (3) year statute of limitations, as well as the evidentiary hurdles associated with proving the amount of off-the-clock work performed by Plaintiff." (Plaintiff's Memorandum at 4.) In addition to the risk of establishing liability, these potential hurdles suggest that the "resolution of [Plaintiff's] claims through trial would be expensive and difficult." <u>Gabrielyan v. S.O. Rose Apartments LLC</u>, No. 15-cv-1771, 2015 WL 5853924, at *2 (D.N.J. Oct. 5, 2015); <u>see also</u> <u>Lyons v. Gerhard's Inc.</u>, 14-06693, 2015 WL 4378514, at *4 (E.D. Pa. July 16, 2015) (Pappert, J.) ("Further litigation will be expensive and carries substantial risk for both sides.").

Further, according to Plaintiff's calculations, she will receive (after attorneys' fees and costs) "approximately one hundred seventeen percent (117%) of the overtime compensation and liquidated damages which she could reasonably expect to prove at trial." (Plaintiff's Memorandum

5

at 3-4.) Plaintiff explains that if she successfully demonstrated she was misclassified as exempt and worked an additional five hours off-the-clock each week during the look-back period, she would be entitled to $2,184.25 in unpaid overtime. (Id. at 4 n.3.) The settlement agreement requires Defendant to pay $2,559.13 in unpaid wages and $2,559.13 for liquidated damages to Plaintiff, and to pay $3,381.74 in attorneys' fees to Plaintiff's counsel. (Settlement Agreement and Release ¶ 1(a)(i)–(iii).) Therefore, the compensation terms of the settlement agreement are fair and reasonable to Plaintiff. See, e.g., Farris v. Nat'l Forensic Consultants, Inc., No. 18-3052, 2019 WL 2502267, at *4 (E.D. Pa. Apr. 24, 2019) (Sitarski, M.J.) (determining that settlement agreement was fair and reasonable because "Plaintiff is receiving an amount in excess of her calculated unpaid wages and liquidated damages"); Gabrielyan, 2015 WL 5853924, at *2 (finding a settlement agreement resolving FLSA claims that awarded 105% of overtime compensation and liquidated damages fair and reasonable).

### 2. Fairness and Reasonableness of Attorney's Fee Award

In an FLSA action, 29 U.S.C. § 216(b) requires that the Court allow "in addition to any judgment awarded to the plaintiff or plaintiffs … a reasonable attorney's fee to be paid by the defendant, and costs of the action." The percentage-of-recovery method is generally used by district courts in the Third Circuit to evaluate a request for attorneys' fees in wage and hour cases. See Mabry, 2015 WL 5025810, at *3 ("The percentage of recovery is the prevailing method used by courts in the Third Circuit for wage and hour cases."). Awards in FLSA wage cases generally range from twenty percent to forty-five percent of the overall settlement. Id. at *4.

Plaintiff's Motion requests an attorney's fee award of approximately forty percent of the total recovery. (Plaintiff's Memorandum at 4.) Although Plaintiff's counsel did not take discovery or engage in any motions practice, the Court finds this amount reasonable given the award that

Plaintiff will recover. The reasonableness of Plaintiff's counsel's requested attorney's fee is confirmed by considering the award that would have been permitted by the lodestar crosscheck. See In re AT&T Corp., 455 F.3d 160, 164 (3d Cir. 2006) (recommending "that district courts use the lodestar method to cross-check the reasonableness of a percentage-of-recovery fee award").

The lodestar formula "requires multiplying the number of hours reasonably expended by a reasonable hourly rate." Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001). To determine the lodestar crosscheck, the requested fee award is divided by the lodestar calculation. In re AT&T, 455 F.3d at 164. Here, the lodestar calculation is $5,700.00.[4] (Plaintiff's Memorandum at 5.) Dividing the requested attorney's fee ($3,381.74) by the lodestar calculation ($5,700.00) results in a lodestar check of .593. This low multiplier confirms that the requested attorney's fee award is fair and reasonable under the FLSA. See, e.g., Martinez v. IFA Grp., Inc., No. 19-02247, 2019 WL 6133860, at *3 (E.D. Pa. Nov. 19, 2019) (Wolson, J.) (approving attorney's fee award of forty percent for counsel who "took no discovery and engaged in no motions practice" given "the low multiplier [of .505], and the low total recovery").

In summary, both the compensation terms and the attorney's fee award are fair and reasonable to Plaintiff, and the second element is fulfilled.

## C. Settlement Does Not Frustrate Implementation of Purposes of FLSA

As to the third requirement, approval of the settlement agreement will not frustrate the purposes of the FLSA. Special consideration of a confidentiality clause is required in the context of FLSA fairness analysis. See Brumley v. Camin Cargo Control, Inc., No. 08-1798, 2012 WL

---

[4] The lodestar calculation was reached by multiplying the number of hours worked (20) by the hourly rate ($285.00). According to Plaintiff's counsel's declaration, he has practiced law "for approximately six (6) years." (ECF 6-2, Ex. B Groh Decl. ¶ 3.) This level of experience corresponds to a range of hourly rates from $280–$360 according to the Community Legal Services ("CLS") chart, which has been discussed favorably by the Third Circuit. See Maldonado, 256 F.3d at 187 ("The fee schedule established by [CLS] … has been approvingly cited by the Third Circuit."). Because Plaintiff's counsel's requested hourly rate of $285 falls within the CLS range, the Court is satisfied that the rate is reasonable.

300583, at *3 (D.N.J. Feb. 1, 2012) (noting the "broad consensus … that FLSA settlements are unlike ordinary settlements with confidential terms"). The Court concludes that the confidentiality clause does not frustrate the purposes of the FLSA and therefore will approve the Settlement Agreement and Release in its entirety.

The confidentiality clause in the settlement agreement, located in paragraph seven, states that:

> Neither [Defendant] nor [Plaintiff] nor their respective attorneys nor any else acting on the Parties' behalf shall seek any publicity or make any statement to the media or press relative to this Lawsuit. If any party or attorney is contacted by any media or press representative, they shall decline to comment on the Lawsuit or this Agreement. [Plaintiff] understands, covenants, and agrees that … [Defendant] may seek to enforce this limited confidentiality requirement by seeking appropriate equitable relief, but that [Defendant] shall not be entitled to recover legal damages, penalties, fees, expenses, or costs associated with [Plaintiff's] violation of this confidentiality requirement in any such enforcement action.

(Settlement Agreement and Release ¶ 7.)

Implementation of the confidentiality clause would not frustrate the purposes of the FLSA because the clause only bars Plaintiff from discussing the settlement with the press—she is not barred from discussing the lawsuit with the employees of Defendant. Employee rights under the FLSA have a "public-private character," which means that "the public, including current, former, or potential employees of a particular defendant, ha[ve] an interest in assuring that employee wages are fair." Li v. Family Garden II, Inc., No. 18-1325, 2019 WL 1296258, at *3 (E.D. Pa. Mar. 20, 2019) (Leeson, J.). This principle has resulted in courts approving "truly 'limited,' or narrowly drawn, confidentiality or non-disparagement clauses only where the clauses did not prevent plaintiffs from discussing the settlements with defendants' employees." Mabry, 2015 WL 5025810, at *3. Compare Sawyer v. Health Care Sols. at Home, Inc., No. 16-5674, 2019 WL 1558668, at *6 (E.D. Pa. Apr. 10, 2019) (Leeson, J.) (approving confidentiality clause on the condition that it be interpreted "to permit all [p]laintiffs to discuss [the settlement] terms with

8

friends, family, [d]efendants' employees, and individuals not affiliated with the media"), Lyons, 2015 WL 4378514, at *5 (approving settlement agreement in entirety because there was no "confidentiality provision that would prevent either party from publicly discussing its terms"), McGee, 2014 WL 2514582, at *3 (concluding that confidentiality provision did not cause frustration of FLSA's purpose because it was "narrowly drawn to prohibit only statements to the media"), and Chickie's & Pete's, 2014 WL 911718, at *3 (finding that a confidentiality provision did not frustrate the purposes of the FLSA because it "only prohibit[ed] [p]laintiffs from disparaging [d]efendants or discussing the substance and negotiations of th[e] matter with the press and media"), with Mabry, 2015 WL 5025810, at *3 (refusing to approve a "wide-sweeping confidentiality provision that prohibit[ed] … [p]laintiff [from] sharing information about the circumstances of th[e] case with [d]efendants' employees"). Because enforcement of the confidentiality provision here does not preclude Plaintiff from discussing the settlement agreement with Defendant's employees (paragraph seven only bars her from discussing the agreement with the press), implementation of the provision would not frustrate the purposes of the FLSA.

Additionally, the remainder of the settlement agreement does not frustrate the implementation of the FLSA. The release language of the settlement agreement, located in paragraph four, is limited and does not exceed the legal or factual basis of Plaintiff's complaint. Compare Sawyer, 2019 WL 1558668, at *5 n.4 (approving release language because it was "limit[ed] … to the claims at issue"), and Simancas v. Pa. Soup & Seafood House, No. 17-1895, 2017 WL 7693355, at *1 n.1 (Robreno, J.) (endorsing release provision because it "only cover[ed] [p]laintiff's wage-related claims" and did not reach potential Civil Rights Act or state law tort claims), with Howard v. Phila. Hous. Auth., 197 F. Supp. 3d 773, 779 (E.D. Pa. 2016) (Robreno, J.) (invalidating release language that, in addition to waiving FLSA claims, would have potentially

9

released unlawful termination and retaliation claims).  Additionally, the settlement agreement's non-disparagement clause, located in paragraph nine, "does not preclude [Plaintiff] from discussing [her] claims against [Defendant] or the terms of the settlement agreement," so it is not so restrictive as to interfere with the FLSA.  Lyons, 2015 WL 4378514, at *5; see also Rubbo v. Peoplescout, Inc., No. 16-4903, 2017 WL 2010311, at *4 (E.D. Pa. May 11, 2017) (Pappert, J.) (approving non-disparagement provision that did "not preclude [plaintiff] from discussing her claims against [defendant] or the [a]greement's terms").

In summary, implementation of the Settlement Agreement and Release would not frustrate the purposes of the FLSA and the third element is fulfilled.

**V.   Conclusion**

For the foregoing reasons, Plaintiff's Unopposed Motion for Approval of Settlement (ECF 6) is **GRANTED** because the Settlement Agreement and Release (ECF 10) represents a fair and reasonable resolution of a bona fide dispute that does not frustrate the purposes of the FLSA. Accordingly, this matter is dismissed with prejudice.

An appropriate order follows.

O:\CIVIL 19\19-3599 Carney v. Travelers Aid Society\19cv3599 Memorandum re Unopposed Motion for Approval of Settlement.docx